UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN SMOLOWITZ, on Behalf of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IBIS TECHNOLOGY CORP, and MARTIN J. REID,<br><br>Defendants. | CASE NO.  03 cv 12613 RCL |
| FRED DEN, on Behalf of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IBIS TECHNOLOGY CORP, and MARTIN J. REID,<br><br>Defendants. | CASE NO.  04 cv 10060 RCL |

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF MARTIN SMOLOWITZ AND GEORGE HARRISON
FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF, AND
<u>FOR APPROVAL OF LEAD PLAINTIFF'S CHOICE OF COUNSEL</u>**

[Additional captions on the following page]

| | |
|---|---|
| **JEFFREY WEINSTEIN, on Behalf of Himself** : <br> **And All Others Similarly Situated,** : <br> : <br>                    **Plaintiff,** : <br>    v. : <br> : <br> **IBIS TECHNOLOGY CORP,** : <br> **and MARTIN J. REID,** : <br> : <br>                    **Defendants.** : | **CASE NO.  04 cv 10088 RCL** |
| **GEORGE HARRISON, on Behalf of** : <br> **Himself And All Others Similarly Situated,** : <br> : <br>                    **Plaintiff,** : <br>    v. : <br> : <br> **IBIS TECHNOLOGY CORP,** : <br> **and MARTIN J. REID,** : <br> : <br>                    **Defendants.** : | **CASE NO.  04 cv 10286 RCL** |
| **ELEANOR PITZER, on Behalf of** : <br> **Herself And All Others Similarly Situated,** : <br> : <br>                    **Plaintiff,** : <br>    v. : <br> : <br> **IBIS TECHNOLOGY CORP,** : <br> **and MARTIN J. REID,** : <br> : <br>                    **Defendants.** : | **CASE NO.  04 cv 10446 RCL** |

The five securities class actions captioned above have been filed in this Court by purchasers of the common stock of Ibis Technology Corp. ("Ibis") against Ibis and its Chief Executive Officer, Martin J. Reid ("Reid").  These actions allege, in general, that the defendants violated the federal securities laws by issuing a series of materially false and

misleading statements during the period from October 2, 2003 and December 12, 2003 (the "Class Period").

Martin Smolowitz and George Harrison (collectively, the "Proposed Lead Plaintiffs"), who purchased shares of Ibis common stock during the Class Period and who thoroughly investigated the alleged wrongdoing, hereby move for an Order: (i) consolidating each of the above-captioned actions, and any related cases filed hereafter; (ii) appointing them as the Lead Plaintiffs to prosecute this litigation on behalf of the proposed class; and (iii) approving Lead Plaintiff's choice of lead and liaison counsel.

## I. INTRODUCTION

Pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and for the reasons set forth below, The Proposed Lead Plaintiffs move this Court for an Order appointing them as the Lead Plaintiffs to prosecute this litigation on behalf of all similarly situated persons, and for approval of their choice of counsel, Law Offices Bernard M. Gross, P.C. (the "Gross firm") and Wolf Haldenstein Adler Freeman & Herz (the "Wolf firm") as Lead Counsel and Shapiro Haber & Urmy LLP (the "Shapiro firm") as Local and Liaison Counsel.

All of the captioned actions allege the same causes of action against the same defendants, Ibis and Reid, for violations of the Exchange Act, including § 10(b), § 20(a) and Rule 10b-5, and are predicated on the same core facts and allege the same core improper acts and practices engaged in by defendants during the Class Period.

The Proposed Lead Plaintiffs have suffered losses and have a substantial interest in zealously prosecuting this litigation consistent with the PSLRA. Accordingly, under

Section 21D of the Exchange Act, the Proposed Lead Plaintiffs should be appointed Lead Plaintiffs as the persons with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Further, they are represented in this action by experienced counsel who are well qualified to prosecute these securities fraud claims.

## II. FACTUAL BACKGROUND

The plaintiffs charge Ibis and Reid with violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5, by issuing a series of materially false and misleading statements to the market during the Class Period concerning Ibis' business and its financial results. Defendants' positive representations are alleged to be materially false and misleading because defendants failed to disclose and misrepresented the following material adverse facts:

(a) that demand for Ibis 200 mm and smaller size wafers was in dramatic decline and that its major customer, IBM, who accounted for virtually all of such product revenues, would purchase only approximately $1 million of such product in Q4 2003, compared to $2.7 million in purchases of such product in Q4 2002;

(b) that because of the facts alleged in subparagraph (a) above and the known reduction in demand in the marketplace for the 200 mm and smaller size wafers, as alleged above, Ibis would be required under GAAP to write down in material amount the value of the 200 mm and smaller size wafer production line it carried on its financial statements;

(c) that Ibis had not agreed upon the terms and conditions of a licensing agreement with IBM with respect to IBM's patented technology used by Ibis in the manufacture of the i2000 implanter, and upon which the i2000 was dependent, that Ibis

was involved in negotiations with IBM and that defendants were not in any position to know if and when it and IBM would agree on the terms and conditions of a licensing agreement;

(d) that until Ibis and IBM had agreed upon the terms and conditions of a licensing agreement and any potential purchaser of the i2000 implanter agreed with IBM to the terms of the licensing agreement, defendants were not able to close on the sale of its i2000 implanter to any purchaser other than IBM, which had not ordered any additional i2000 implanters;

(e) that defendants lacked any reasonable basis for their statements to the market that the orders Ibis had received for one to three i2000 implanters from Japanese wafer manufacturers would close by December 31, 2003, in light of the facts alleged in subparagraphs (c) and (d) herein. In addition, defendants knew that there was a substantial probability that those orders would be withdrawn pending the Japanese purchasers' decisions whether and when to agree to the terms of any licensing agreement that Ibis might enter into with IBM; and

(f) that as a result of the foregoing, defendants lacked a reasonable basis for their statements made during the Class period concerning the Company's prospects, earnings and value, as alleged hereinafter.

On December 15, 2003, defendants surprised the market by revealing that Ibis would record a "material charge" due to the impairment of its smaller size wafer production equipment, that Ibis would not record any sales of i2000 implanters in Q4 2003 from the Japanese wafer manufactures, and that the timing of future orders "is very difficult to predict because the sales require the purchaser to enter into a license agreement with a third party." In reaction to the announcement, the price of Ibis common stock fell from a

$15.40 per share close on December 12, 2003 to a close of $13.20 per share on December 15, 2003 and to a close of $10.37 per share on December 16, 2003 on trading of 4.4 million shares, almost 50% of the outstanding shares of Ibis common stock.

As a result of defendants' material misrepresentations and omissions regarding the true operating financial and business condition of the Company, Ibis common stock traded at artificially inflated prices during the Class Period and the Proposed Lead Plaintiffs and other class members suffered damage.

### III. PROCEDURAL BACKGROUND

The Smolowitz action, Case No. 03 cv 12613 RCL, was the first filed action and pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notice to class members was published over the Business Wire, a nationally circulated wire services, on January 7, 2004 (the "Notice").[1] The Notice informed investors who purchased or otherwise acquired Ibis common stock during the Class Period of the pendency of the lawsuit, the nature of allegations, the deadline within which they may move for appointment as lead plaintiff and related pertinent matters. The Exchange Act requires such early notice in order to advise class members of their right to seek appointment as lead plaintiff within sixty days of the publication of the notice. The Proposed Lead Plaintiffs filed this motion within the 60 day statutory period under 15 U.S.C. 78u-4(a)(3).

---

[1] The January 7, 2004 notice commenced the 60 day statutory period for moving for Lead Plaintiff under 15 U.S.C. 78u-4(a)(3). A copy of the January 7, 2004 notice is attached hereto as Exhibit A.

## IV.  ARGUMENT

A.  **The Related Actions Should Be Consolidated.**

Five class actions were filed against the defendants, all of which are pending in this District and captioned as follows:

| Case Name | Docket No. |
|---|---|
| *Smolowitz v. Ibis Technology Corp., et al.* | Case No. 03 cv 12613 RCL |
| *Den v. Ibis Technology Corp., et al.* | Case No. 04 cv 10060 RCL |
| *Weinstein v. Ibis Technology Corp., et al.* | Case No. 04 cv 10088 RCL |
| *Harrison v. Ibis Technology Corp., et al.* | Case No. 04 cv 10286 RCL |
| *Pitzer v. Ibis Technology Corp., et al.* | Case No. 04 cv 10446 RCL |

The captioned actions referenced above all arise from the same basic set of events, allege virtually identical factual and legal issues, and name the same defendants. Each of the actions has been filed pursuant to §§ 10(b) and 20 of the Exchange Act of 1934 and SEC Rule 10b-5.

Where, as here, two or more actions concern the same core allegations, Fed. R. Civ. P. 42(a) provides that those actions be consolidated. "'The proper solution to problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a).'" Hargett v. Alley Fed. Sav. Bank, 60 F.3d 754, 765 (11th Cir. 1995) (quoting Miller v. United States Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)). In securities actions where the complaints are based on common questions of law and fact, consolidation is appropriate. Nager v. Websecure, Inc., 1997 U.S. Dist. LEXIS 19601 (D.Mass. Nov. 26, 1997) (O'Toole, J.) ("Websecure").

Accordingly, the motion to consolidate the above captioned actions should be granted.

### B.  The Proposed Lead Plaintiffs Are The Most Adequate Plaintiff

#### 1.  The Legal Requirements Under The PSLRA

The PSLRA sets forth procedures for the selection of the Lead Plaintiff in class actions brought under the Exchange Act.  15 U.S.C. § 78u-4(a)(3).  The PSLRA requires the court to consider all motions made by purported class members seeking appointment and to determine the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members". 15 U.S.C. § 78u-4(a)(3)(B)(i).

In determining the motion, the Court must adopt a presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accord In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39 (D.Mass. 2002).

As reflected in the certifications of the Proposed Lead Plaintiffs filed with their complaints, they purchased a total of 700 shares of Ibis common stock during the Class Period and incurred losses of at least $2,156.  The Proposed Lead Plaintiffs have a substantial financial interest in the relief sought by the proposed class. and while unaware

of the total losses of other similarly situated investors who also may move for appointment as Lead Plaintiff, the Proposed Lead Plaintiffs seek appointment as the "most adequate plaintiff". For these reasons, the Court should appoint the Proposed Lead Plaintiffs as the Lead Plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(i).

>    **2.    The Proposed Lead Plaintiffs Satisfy the
>           Requirements of Rule 23**

The PSLRA requires that a Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the claims of class representatives, Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class. Typicality and adequacy of representation are the only provisions relevant to the determination of Lead Plaintiff under the PSLRA. Lernout, supra.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Courts in this District have held that the typicality requirement is met where the plaintiffs' claims arise from the same course of conduct and involve the same legal theory as the claims of the rest of the class. Lernout, supra, 138 F. Supp. 2d at 46 and cases cited therein. The typicality standard is met even where minor distinctions exist and, as one court noted, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the

claims constituting each individual action is not required." Chisolm v. Transouth Fin. Corp., 184 F.R.D. 556, 563 (E.D. Va. 1999) (citation omitted).

The claims of each of the Proposed Lead Plaintiffs are typical of those of the Class. They allege, as do all class members, that defendants violated the Exchange Act by a common course of conduct during the Class Period, and each of the the Proposed Lead Plaintiffs, like all members of the Class, acquired shares of Ibis common stock during the Class Period at prices allegedly artificially inflated by defendants' misconduct, and was damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, presumptively satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members do not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." Adair v. Sorenson, 134 F.R.D. at 13, 18 (D. Mass. 1991).

Each of the Proposed Lead Plaintiffs is an adequate representative for the class. There is no antagonism between their interests and those of the class. Moreover, they have selected as counsel the Gross, Wolf and Shapiro firms which are highly experienced in prosecuting securities class actions. Accordingly, the Proposed Lead Plaintiffs' motion to be appointed as the Lead Plaintiff should be granted.

### C.  The Court Should Approve the Proposed Lead Plaintiffs' Choice of Counsel

The PSLRA vests authority in the Lead Plaintiffs to select and retain counsel to represent the interests of the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb the Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Proposed Lead Plaintiffs have selected the Gross and Wolf firms as lead counsel (the "Lead Counsel") and the Shapiro firm as local and liaison counsel in this action. Each firm each has extensive experience in the areas of securities and complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.[2] Therefore, the Court should approve the Proposed Lead Plaintiffs' choice of counsel.

---

[2]  Firm resume for the Gross firm, Wolf firm and Shapiro firm are attached hereto as Exhibits B, C and D.

## V. **CONCLUSION**

For the foregoing reasons, the Proposed Lead Plaintiffs respectfully requests that the Court grant an Order: (i) consolidating the above-captioned related actions pursuant to Fed. R. Civ. P. 42(a) and 15 U.S.C. § 78u-4(a)(3)(B)(ii); (ii) appointing them as Lead Plaintiffs in this action pursuant to 15 U.S.C. § 78u-4(a)(3); and (iii) approving their selection of the Gross, Wolf, and Shapiro firms as their Lead and Local Counsel in this litigation pursuant to15 U.S.C. § 78u-4(a)(3)(B)(v).

Dated: Boston, MA
March 5, 2004

Respectfully submitted,

/s/ Theodore M. Hess-Mahan
Thomas Shapiro BBO #454680
Theodore Hess-Mahan BBO #557109
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
Telephone: 617-439-3939
Fax: 617-439-0134

Deborah R. Gross
Robert P. Frutkin
Law Office Bernard M. Gross
1515 Locust Street, 2nd Floor
Philadelphia, PA 19102
Telephone: 215 561-3600
Fax: 215-561-3000

Gregory Mark Nespole
Wolf Haldenstein Adler Freeman & Herz
270 Madison Avenue
New York, NY 10016
Telephone: 212 545-4600
Fax: 212 545-4653

Law Offices of Bruce Murphy
265 Lloyds Lane
Vero Beach, Florida 32963
(772) 231-4202

Attorneys for the Proposed Lead Plaintiffs