UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN SMOLOWITZ, on Behalf of Himself and All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>v.<br><br>IBIS TECHNOLOGY CORP. and MARTIN J. REID,<br><br>                 Defendants. | **CIVIL ACTION<br>NO. 03-12613 (RCL)**<br><br>**DEFENDANTS' LIMITED OPPOSITION TO AMENDED MOTION OF MARTIN SMOLOWITZ AND GEORGE HARRISON FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF, AND FOR APPROVAL OF LEAD PLAINTIFF'S CHOICE OF COUNSEL** |
| FRED DEN, on Behalf of Himself and All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>v.<br><br>IBIS TECHNOLOGY CORP. and MARTIN J. REID,<br><br>                 Defendants. | **CIVIL ACTION<br>NO. 04-10060 (RCL)** |

| | |
|---|---|
| JEFFREY WEINSTEIN, on Behalf of Himself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>IBIS TECHNOLOGY CORP. and MARTIN J. REID,<br><br>     Defendants. | **CIVIL ACTION**<br>**NO. 04-10088 (RCL)** |
| GEORGE HARRISON, on Behalf of Himself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>IBIS TECHNOLOGY CORP. and MARTIN J. REID,<br><br>     Defendants. | **CIVIL ACTION**<br>**NO. 04-10286 (RCL)** |
| ELEANOR PITZER, on Behalf of Herself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>IBIS TECHNOLOGY CORP. and MARTIN J. REID,<br><br>     Defendants. | **CIVIL ACTION**<br>**NO. 04-10446 (RCL)** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

PRELIMINARY STATEMENT ...........................................................................................2

STATEMENT OF FACTS ....................................................................................................4

ARGUMENT .........................................................................................................................4

I. APPOINTING AGGREGATIONS OF UNRELATED
INDIVIDUALS AS LEAD PLAINTIFFS CONTRAVENES
THE REFORM ACT'S LEAD PLAINTIFF PROVISIONS.............................................4

II. THE APPOINTMENT OF MULTIPLE UNRELATED LEAD
PLAINTIFFS WOULD PREJUDICE DEFENDANTS ..................................................11

III. DEFENDANTS RESERVE THEIR RIGHTS
TO OPPOSE ANY MOTIONS FOR CLASS CERTIFICATION ..................................12

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

Aronson v. McKesson HBOC, Inc.,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...................................................................9

Bank One Shareholders Class Actions
96 F.Supp.2d 780, 781 (N.D. Ill. 2000) ..................................................................6

Bowman v. Legato Sys., Inc.,
195 F.R.D. 655 (N.D. Cal. 2000) ...........................................................................9

In re Donnkenny, Inc. Sec. Litig.,
171 F.R.D. 156 (S.D.N.Y. 1997) ...........................................................1, 9, 10, 11

In re Enron Corp. Sec. Litig.,
2002 U.S. Dist. Lexis 3688 (S.D. Tex. Feb. 15, 2002) ..........................................9

In re Gemstar – TV Guide, Int'l, Inc., Sec. Litig,
209 F.R.D. 447, 451-52 (C.D. Cal. 2002) ..............................................................9

Gluck v. Cellstar Corp.,
976 F. Supp. 542 (N.D. Tex. 1997) ..................................................................3, 11

Greebel v. FTP Software, Inc.,
939 F. Supp. 57 (D. Mass. 1996) ............................................................................2

Howard Gunty Profit Sharing Plan v. Carematrix Corp.,
2000 WL 33348124, at *4-6 .................................................................................10

Howard Gunty Profit Sharing v. Quantum Corp.,
No. 96-20711 SW, slip op. (N.D. Cal. Feb. 6, 1997) .............................................1

King v. Livent, Inc.,
36 F. Supp. 2d 187 (S.D.N.Y. 1999) ......................................................................1

In re Lernout & Hauspie Sec. Litig.,
138 F. Supp 2d 39 (D. Mass. 2001) ......................................................................10

Mayo. V. Appropos Tech., Inc.,
No.01C8406, 2002 WL 193393, at *3 (N.D. Ill. Feb. 7, 2002) ............................10

In re Milestone Scientific Sec. Litig.,
 183 F.R.D. 404 (D.N.J. 1998)...................................................................................7

In re Network Assocs., Inc. Sec. Litig.,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999).........................................................2, 6, 8, 9

Ravens v. Iftikar,
 174 F.R.D. 651 (N.D. Cal. 1997).............................................................................10

In re Razorfish, Inc. Sec. Litig.,
 143 F. Supp. 2d 304 (S.D.N.Y. 2001)..................................................................9, 10

In re Read-Rite Corp. Sec. Litig.,
 No. C97-20059 RMW, slip op. (N.D. Cal. May 27, 1997)...................................1

In re Rhythms Sec. Litig.,
 No. 02-K-35 (CBS), slip op. ...............................................................................1, 10

Sakhrani v. Brightpoint, Inc.,
 78 F. Supp. 2d 845 (S.D. Ind. 1999)..............................................................passim

In re Telxon Corp. Sec. Litig.,
 67 F. Supp. 2d 803 (N.D. Ohio 1999).........................................................6, 7, 8, 9

Tumolo v. Cymer, Inc.,
 [1999 Transfer Binder] Fed. Sec. L. Rep. (CCH)
 ¶ 90,453 (S.D. Cal. Jan. 22, 1999)..........................................................................10

In re Waste Mgmt., Inc. Sec. Litig.,
 128 F. Supp. 2d 401 (S.D. Tex. 2000) ......................................................................9

**Statutes, Rules, and Legislative History**

Private Securities Litigation Reform Act of 1995,
 Pub. L. No. 104-67, 109 Stat. 737 ...........................................................................1

15 U.S.C. § 78u-4(a)(3) ..................................................................................................1, 3, 5

Fed. R. Civ. P. 23 ...................................................................................................................3, 5

H.R. Conf. Rep. No. 104-369 (1995),
 reprinted in 1995 U.S.C.C.A.N 730..........................................................4, 5, 10, 12

## INTRODUCTION

On March 8, 2004, plaintiffs Martin Smolowitz and George Harrison filed an Amended Motion for the Appointment of Lead Plaintiff ("Amended Motion"). That Amended Motion seeks to have three apparently unrelated individuals (collectively, "Proposed Lead Plaintiffs") who claim to have suffered $4,173 in aggregate damages appointed as "lead plaintiff" under the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "Reform Act" or the "Act").[1] Defendants Ibis Technology Corp. and Martin J. Reid (collectively, the "Defendants") respectfully submit this memorandum in opposition to that portion of the Amended Motion relating to the appointment of lead plaintiff only.[2] The appointment of the proposed aggregation of apparently unrelated individuals as lead plaintiff would directly contravene the language of the Reform Act (which refers to the lead plaintiff in the singular in all but one instance) and would undercut its purpose (by minimizing the possibility that the lead plaintiff – versus its counsel – actually would monitor, manage, and direct the litigation).[3]

---

[1] Initially, Messrs. Smolowitz and Harrison petitioned the Court to serve as Lead Plaintiff. See Motion of Martin Smolowitz and George Harrison for Consolidation, Appointment of Lead Plaintiff and For Approval of Lead Plaintiff's Choice of Counsel ("Motion") and Memorandum of Law In Support of Motion of Martin Smolowitz and George Harrison for Consolidation, Appointment of Lead Plaintiff and for Approval of Lead Plaintiff's Choice of Counsel ("Memorandum") (Docket No. 7). On March 8, 2004, that Motion was amended to add Mark G. Forgue as a proposed lead plaintiff ("Amended Motion") (Docket No. 8).

[2] Until this Court selects a lead plaintiff (who, in turn, has the right under the Reform Act to select counsel; see 15 U.S.C. § 78u-4(a)(3)(B)(v) (2001)), it would be premature for the Court to address issues relating to choice of lead counsel.

[3] Defendants have standing to object to motions for appointment of lead plaintiffs on certain grounds, and numerous courts have based their rulings on lead plaintiff motions on the arguments made by defendants. See, e.g., King v. Livent, Inc., 36 F. Supp. 2d 187, 191 (S.D.N.Y. 1999) ("[A] therapeutic appointment process . . . will work better with more information than less. Indeed, the defendants . . . have supplied certain of the information on which this motion is decided."); In Re Rhythms Sec. Litig., No. 02-K-35 (CBS), slip op at 6 (considering defendants objections to proposed aggregation of individuals as lead plaintiff because defendants have an interest in the efficient administration of case) (attached hereto as Exhibit A); In re Read-Rite Corp. Sec. Litig., No. C97-20059 RMW, slip op. at 3 (N.D. Cal. May 27, 1997) ("defendants are not prohibited from challenging whether the most adequate plaintiff presumption should be adopted initially by the court") (attached hereto as Exhibit B); In re Donnkenny, Inc. Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (denying motions for appointment of lead plaintiff based on arguments made by defendants); Howard Gunty Profit Sharing v. Quantum Corp., No. 96-20711 SW, slip op. at 7

## PRELIMINARY STATEMENT

Under the Reform Act, Congress now requires federal courts to appoint a "lead plaintiff" in every securities class action case. The function of the lead plaintiff is to exercise control over the course of the litigation as well as over plaintiffs' counsel, who is selected by the lead plaintiff. As one court explained:

> The [Reform Act] was provoked by a wide-spread perception that securities class actions had become "lawyer-driven," i.e., that such litigation had been typically initiated and controlled by plaintiff's counsel, bark to core, start to finish. Congress found that the named plaintiffs, while ostensibly in charge of the litigation as fiduciaries for all similarly situated, were, in reality, token figureheads with no actual control over their cases. In the vast run of cases, it was the lawyers who initiated them, selected the plaintiffs, controlled the strategy, controlled the settlement, and collected fees from the settlement - - or at least so Congress found. This, Congress feared, led to worthless as well as worthwhile cases and to lawyers reaping excessive fees that should have gone to wronged investors.

In re Network Assocs., Inc. Sec. Litig., 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). In order to root out "that practice – a practice wherein the class lawyer selected the class plaintiff – Congress sought to substitute a new model, one that reversed the roles." Id.

> Under the new model, the court would appoint the lead plaintiff who, in turn, would select and direct class counsel. Congress expected that the lead plaintiff would normally be an institutional investor with a large stake in the outcome. The lead plaintiff would then monitor, manage and control the litigation, making, as is the case in ordinary cases, litigation decisions on resource allocation and settlement, with, of course, the advice of, but not the prerogative of, class counsel.

Id. To ensure that the lead plaintiff would have sufficient economic incentive and personal interest in the litigation to manage it and class counsel actively, Congress provided in the Reform

---

(N.D. Cal. Feb. 6, 1997) ("[P]ermitting defendants to make a limited, facial challenge to a plaintiff's motion for appointment as lead plaintiff does not disrupt the statutory framework Congress set forth in § 78u-4(a)(3)(B)(iii) (attached hereto as Exhibit C). Rather, it is consistent with the goal of alleviating the abuses of the class action device in securities litigation."). In Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60-61 (D. Mass. 1996), the court held that defendants have standing to contest defects in the process for appointing a lead plaintiff, but not the adequacy or typicality of particular proposed lead plaintiffs. Consistent with Greebel, Defendants are concerned about Plaintiffs' failure to adhere to the process put in place by Congress. The proposed aggregation fails to propose

Act a presumption that the lead plaintiff would be the person or persons with the "largest financial interest in the relief sought by the class" (i.e., the largest alleged losses). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

The efforts here of the Proposed Lead Plaintiffs to combine their alleged losses in order to cobble together a lead plaintiff aggregation of three unrelated individuals with collectively larger losses ignore the plain language and structure of the lead plaintiff provision. Indeed, the appointment of such aggregations would undermine Congress's intent in adopting the Reform Act's lead plaintiff provisions – making it less likely the lead plaintiff would act as a unit (or even act at all) and more likely that lawyers would dominate the process.

Appointment of an aggregation of unrelated individuals as lead plaintiff also would prejudice the Defendants. See Gluck v. Cellstar Corp., 976 F. Supp. 542, 543-44 (N.D. Tex. 1997). Defendants believe that the complaints in this litigation lack merit and should be dismissed. Defendants intend to seek dismissal of these actions as a matter of law. If, however, this litigation is not completely dismissed on Defendants' motion, Plaintiffs would then move for class certification. The greater the number of disparate lead plaintiffs, the more unnecessarily expensive it would be for Defendants to take class-certification related discovery, including depositions of the class representatives with regard to their typicality and adequacy under Federal Rule of Civil Procedure 23. Defendants do not oppose the appointment, however, of a single member of the proposed aggregation (or a small number of related members, if any exist) who the Court in its discretion finds has the "largest financial interest in the relief sought" by the proposed class.

---

for consideration by the Court one class member or a small group of related class members who have the biggest financial stake in the litigation.

## STATEMENT OF FACTS

The Proposed Lead Plaintiffs claim that they purchased an aggregate total of only 1060 shares of Ibis common stock and suffered aggregate alleged losses of $4,173.00. More specifically, Smolowitz and Harrison are alleged to have suffered a combined total of $2156.00 in losses, and Forgue is alleged to have suffered $2,017.00 in losses. See Memorandum at 8; Amended Motion at 2.

The three members of the proposed lead plaintiff aggregation appear to have no connection with one another whatsoever, except that they are all represented by the same law firms. The Proposed Lead Plaintiffs do not explain why an aggregation of unrelated individuals should be appointed as lead plaintiff, as opposed to the single member of their aggregation (Forgue) who has the largest alleged loss (assuming he otherwise satisfies the Reform Act's lead plaintiff provision criteria), consistent with the Act's presumption that the lead plaintiff should be the person with the greatest financial interest in any potential recovery. Put another way, while "[i]n some situations there might be a need for a group of unrelated lead plaintiffs, . . . this is not such a case," and the Proposed Lead Plaintiffs do not contend otherwise. Sakhrani v. Brightpoint, Inc., 78 F. Supp. 2d 845, 854 (S.D. Ind. 1999) (appointing single lead plaintiff).

## ARGUMENT

### I. APPOINTING AGGREGATIONS OF UNRELATED INDIVIDUALS AND ENTITIES AS LEAD PLAINTIFFS CONTRAVENES THE REFORM ACT'S LEAD PLAINTIFF PROVISIONS.

In December 1995 Congress passed the Reform Act over President Clinton's veto, having "been prompted by significant evidence of abuse in private securities lawsuits to enact reforms." H.R. Conf. Rep. No. 104-369, at 31 (1995), reprinted in 1995 U.S.C.C.A.N 730. The abuses included, among other practices, (1) "the routine filing of lawsuits . . . whenever there is a

-4-

significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action;" and (2) "the manipulation by class action lawyers of the clients whom they purportedly represent." Id.

Congress targeted these abuses through, among other things, the Reform Act's "lead plaintiff" provision. See 15 U.S.C. § 78u-4(a)(3). The Reform Act requires courts to appoint as lead plaintiff "the members or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Section 21D(a)(3)(B)(iii)(I) of the Reform Act directs courts to "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons" that (1) either filed the complaint or moved for appointment of lead plaintiff in response to a notice of the action, (2) has the "largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rule of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Congress hoped and expected that this provision would encourage institutional plaintiffs, like mutual funds, pension funds, and the like, to take control of securities class action litigation because they presumably would have the biggest alleged losses, and hence the "largest financial stake in the relief sought." H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 733.

Appointing aggregations of unrelated individuals as lead plaintiffs (as the Proposed Lead Plaintiffs ask this Court to do) would contravene Congress intentions in enacting the Reform Act's lead plaintiff provisions. It is unrealistic to assume that three unconnected individuals would work together as a unified whole to direct and manage this litigation in the manner envisioned by Congress. Rather, it is most likely that the lawyers who brought this litigation will

control the process and direct these artificial and divergent aggregations, rather than the other way around. As the court explained in Network Assocs.:

> To be sure, the [Reform Act] thus contemplates that a "group of persons" may qualify as the lead. The [Reform Act], however, equally contemplates that the court will select "the most adequate plaintiff" as the lead. The whole point of the reform was to install a lead plaintiff with substantive decision-making ability and authority. For example, a group of mutual funds managed by a single organization might qualify. It would have an internal coherency and would be capable of acting as a unified decision-maker. A mass of unrelated investors could not do so. Were it otherwise, then a qualified institutional investor with the single largest loss could be trumped by a collage of individual investors with greater aggregate losses but no ability to manage the case. Congress plainly rejected that proposition.

Network Assocs., 76 F. Supp. 2d at 1024. Accord Sakhrani, 78 F. Supp. 2d at 847.

While plaintiffs undoubtedly will argue that some courts have allowed groups of individuals to aggregate their losses artificially in order to cobble together the largest pool of alleged losses, a number of recent and well-reasoned decisions recognize that "in most situations the appointment of an artificial group as lead plaintiffs will tend to undermine the goals of the [Reform Act]." Sakhrani, 78 F. Supp. 2d at 847. Accord In re Bank One Shareholders Class Actions, 96 F. Supp. 2d 780, 783 (N.D. Ill. 2000) ("any choice that was based on the number of shares held by such an assemblage of small holders would really subvert the purposes of the Reform Act by maximizing the prospect that the lawsuit would truly be run by the lawyers and not by the client class members (none of whom might have a sufficient amount at stake to justify the necessary investment of time and effort to exercise meaningful control of the litigation.")

For example, in In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803 (N.D. Ohio 1999), the court denied a motion to appoint an aggregation comprised of two brothers and a third unrelated individual as lead plaintiff. The two brothers, the Haymans, had proposed their appointment as lead plaintiff along with a third individual, Elkman, who together formed the "Hayman Group."

Id. at 809. The court refused to appoint this aggregation of three as lead plaintiff because of the absence of any relationship between the Haymans, on the one hand, and Elkman, on the other. Id. at 823. The Telxon court explained that, because Elkman had no pre-existing relationship or association with the Hayman brothers, he could not properly be considered part of a "group" with them under the Reform Act. Id. Instead, the court appointed a group consisting of just the Hayman brothers as lead plaintiff, because, it asserted, "[a]s brothers, the Haymans obviously have a pre-existing relationship and a basis for acting as a collective unit," and, consequently, "they will be able to speak with a single voice in their dealings with their chosen counsel." Id. In reaching this result, the Telxon court held that "the context and structure of the [Reform Act] evince an intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys." Telxon, 67 F. Supp. 2d at 813.

The Telxon court observed that its decision was supported by the express language of the Reform Act, stating:

> Examination of the lead plaintiff provisions of the [Reform Act] reveals that they speak in the singular in all instances save one: the reference to "group of persons." In all other instances, the statute uses the singular "person." . . . Without exception, these provisions of the [Reform Act] speak of a single plaintiff; on their face, they do not contemplate multiple plaintiffs. Other courts have made this same observation. See, e.g., In re Milestone Scientific Sec. Litig., 183 F.R.D. 404, 416-17 (D.N.J. 1998) ("Significantly, apart from the sole reference to 'a group of persons,' the [Reform Act] is worded in the singular, providing a mechanisms of the appointment of 'the most adequate plaintiff,' not the most adequate plaintiffs.").

Id. at 812. The Telxon court further explained that the purpose of the statute – shifting control over class action litigation from class counsel to the allegedly injured investors themselves – would be disserved by appointment of an aggregation of unrelated individuals:

-7-

> The greater the number of persons comprising the group, the more difficult it is for those persons to communicate with each other, and to speak with a single, coherent voice when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation. With the lead plaintiff group splintered and with no authoritative voice with which to exercise control over counsel, counsel is no more effectively controlled than in the pre-[Reform Act] era.

Id. at 815-16. In sum, the Telxon court held that, while the Reform Act literally "does allow more than one person to serve as the lead plaintiff; it would be inconsistent with the [Reform Act's] facial disapproval of multiple plaintiffs, and its persistent use of the singular terms person and plaintiff . . . to allow a melange of unrelated persons to serve as the lead plaintiff." Id. at 813 (emphasis in original).

The courts in Network Assocs. and Sakhrani reached the same result, denying motions for the appointment of aggregations of unrelated investors as lead plaintiffs. In Network Assocs., the court denied motions filed by two competing aggregations of unrelated individuals seeking appointment as lead plaintiffs, observing: "Such unorganized groups of unrelated investors with nothing in common other than the lawyer and no clear-cut mechanism for making decisions could not 'fairly and adequately' carry out the responsibility to protect the interest of the class." Network Assocs., 76 F. Supp. 2d at 1024 (appointing pension board as sole lead plaintiff). The court went on to state: "It seems clear that Congress intended a single, strong lead plaintiff to control counsel and the litigation. No reference whatsoever was made in the [legislative] reports to multiple, unrelated individuals at the helm." Id. at 1025 (emphasis added).

Similarly, in Sakhrani, the court denied lead plaintiff motions filed by two different aggregations of unrelated individuals, appointing instead a single individual from a proposed aggregation of four as the lead plaintiff. Sakhrani, 78 F. Supp. 2d at 854. Following the

reasoning of Network Assocs., the Sakhrani court held that selecting as lead plaintiff an aggregation of investors "who have nothing in common with one another beyond their investment is not an appropriate interpretation of the term 'group' in the [Reform Act.]." Id. at 853. The court explained that "[s]uch an interpretation rewards lawyers who solicit plaintiffs." Id.[4]

The holdings in Telxon, Sakhrani and Network Assocs. echo the earlier words of the court in In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156 (S.D.N.Y. 1997), where motions to appoint as lead plaintiff aggregations of unrelated investors were denied. There, the court remarked that "[t]o allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation." Id. at 158. "Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff." Id. (citations omitted). For these reasons, the Donkenny court

---

[4] See also In re Gemstar -TV Guide, Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 451-52 (C.D. Cal. 2002) (rejecting motion for lead plaintiff aggregation where there was no apparent relationship among the proposed lead plaintiffs and no credible explanation for the creation of the group of proposed plaintiffs); In re Enron Corp. Sec. Litig., 2002 US Dist. Lexis 3688, at n. 27 (S.D. Tex, Feb. 15, 2002) ("a pre-existing relationship among proposed lead plaintiffs independent of this litigation, rather than a lawyer created group with no prior relationship, is an important factor in determining whether a group can adequately control the litigation"); In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (rejecting motion for appointment as lead plaintiff of aggregation consisting of Fahnestock Asset Management, two unrelated day-trading companies, and an unrelated individual (collectively, the "Azimut Group") and appointing instead only Fahnestock as lead plaintiff, "[g]iven. . . that the Azimut Group has no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity"); Bowman v. Legato Sys., Inc., 195 F.R.D. 655, 658 (N.D. Cal. 2000) (rejecting motion of aggregation of six unrelated individuals and entities (collectively, the "Legato Group") for appointment as lead plaintiff, and appointing instead a single institutional investor; "the Legato Group is not the type of 'group' which Congress intended to act as lead plaintiff"); In re Waste Mgmt., Inc. Sec. Litig., 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (appointing a single institutional investor as lead plaintiff, court adopts strict definition of term "group" in Reform Act and holds that "at maximum a small group with the largest financial interest in the outcome of the litigation and a prelitigation relationship based on more than their losing investment, satisfies the terms of the [Reform Act] and serves the purpose behind its enactment"); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1154 (N.D. Cal. 1999) (holding that "the lead plaintiff must be an individual person or entity, or at most, a close-knit 'group of persons'").

appointed a single entity (a limited partnership with the largest individual losses) as the lead plaintiff. Id.[5]

The reasoning of Donnkenny and the many cases that have followed it applies with equal force here. The lead plaintiff aggregation proposed by the Proposed Lead Plaintiffs is simply an "artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel.'" In re Razorfish, Inc. Sec. Litig, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001). Such tactics have the practical effect of undermining Congress's stated intent in enacting the Reform Act of preventing lawyer-driven litigation, and disempower the appointed lead plaintiffs through potential dilution and confusion within a disparate aggregation. See H.R. Conf. Rep. No. 104-369, at 31-35 (1995), reprinted in 1995 U.S.C.C.A.N. 730-34. For this reason, the Amended Motion should be denied to the extent that it seeks the appointment of an unrelated lead plaintiff aggregation.[6]

---

[5] Accord Mayo v. Apropos Tech., Inc., No. 01 C 8406, 2002 WL 193393, at *3 (N.D. Ill. Feb. 7, 2002) (appointing single investor as lead plaintiff over competing motion of group of unrelated investors, where defendants argued that aggregation of unrelated investors as lead plaintiff was inappropriate); Ravens v. Iftikar, 174 F.R.D. 651, 652 (N.D. Cal. 1997) (denying motion to appoint unrelated aggregation as lead plaintiff); Tumolo v. Cymer, Inc., [1999 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,453, at 92,100 (S.D. Cal. Jan. 22, 1999) (rejecting proposal for unrelated seven-member aggregation with largest losses as lead plaintiff) (attached hereto as Exhibit D); In re Rhythms Sec. Litig., at 10-11 (denying motion to appoint unrelated aggregation as lead plaintiff because such a group would not "meet the intent of the statute" but would rather "circumvent[]" it. ]

[6] The losses of the three proposed lead plaintiffs in this case, even in the aggregate, are relatively minimal – only about $4000 total. Some courts have been persuaded to aggregate lead plaintiffs where individual losses were extremely substantial (thus giving the proposed plaintiffs real financial incentive to manage the litigation process and plaintiffs' counsel actively), and where presented with concrete evidence suggesting their commitment to do so and their ability to work together as a group effectively. See In re Lernout & Hauspie Sec. Litig., 138 F. Supp 2d 39, 44-45 (D. Mass. 2001) (Saris, J.) (refusing to "blindly aggregate the losses of unrelated plaintiffs to confer lead plaintiff status to a group," but permitting aggregation where one proposed lead plaintiff claimed losses exceeding $600,000 and after receiving written evidence of the group's personal commitment and ability to work together, including: evidence that the proposed individuals had met in person to discuss the litigation, , the filing of a written litigation strategy memorandum in camera with the Court, and the individuals' agreement to speak every two weeks); Howard Gunty Profit Sharing Plan v.. Carematrix Corp., 2000 WL 33348124, at *4-6 (D. Mass. Aug. 15, 2000) (Wolf, J.) (noting that lead plaintiff cannot be "assemblage of unrelated persons," , but appointing two investors as lead plaintiffs where one suffered over $800,000 in losses and the other over $200,000, and after receiving evidence indicating that they had met and conferred about case management and strategy and indicating their ability and commitment to work together). The proposed lead plaintiffs in this case, however, have relatively

## II.   THE APPOINTMENT OF MULTIPLE UNRELATED LEAD PLAINTIFFS WOULD PREJUDICE DEFENDANTS.

The Amended Motion to appoint an aggregation of unrelated investors as lead plaintiffs in this case should be denied not only because it contravenes Congressional intent in passing the Reform Act's lead plaintiff provisions, but also because, if granted, it would place additional burdens on both Defendants and the Court with respect to managing the litigation, and most particularly the process relating to class certification and selection of class representatives. Specifically, if this litigation were not dismissed, as Defendants believe that it should be, it would move forward to the class certification phase. In order to determine whether to oppose class certification and to assess fully the adequacy and typicality of particular class representatives, Defendants would be forced to take depositions and obtain discovery from all three members of the lead plaintiff aggregation. Congress, however, enacted the Reform Act to reduce (not multiply unnecessarily) the costs and time involved in defending securities litigation because "most defendants in securities fraud cases chose to settle rather than incur the large legal fees and expenses necessarily required for discovery, preparation and trial." Cellstar, 976 F. Supp. at 544.

Appointing an aggregation of three unrelated individuals as lead plaintiffs would not only have negative consequences for this litigation, it could also set a dangerous precedent. Plaintiffs' counsel in future cases would be encouraged and emboldened to aggregate or "pile up" as many prospective plaintiffs as possible in advance of their motion for appointment of lead plaintiffs in order to ensure their berth as lead counsel. Rather than make it more likely that "real financial interests in the integrity of the market would control the litigation," Donnkenny, 171 F.R.D. at

---

minimal losses and nowhere near the same financial incentive to manage the litigation process as did the proposed lead plaintiffs in these two cases. There is simply no reason here to believe that they would have the inclination, or the ability, to work together effectively to direct this litigation, as opposed simply to abdicating that role to counsel.

157, the lead plaintiff process could deteriorate into a means to entrench the interests of plaintiffs' attorneys in controlling class action suits. Indeed, as the court noted in Sakhrani, the decisions that have allowed aggregation of the losses of unrelated individuals have indirectly encouraged exactly this sort of behavior. See Sakhrani, 78 F. Supp. 2d at 852.

### III. DEFENDANTS RESERVE THEIR RIGHTS TO OPPOSE ANY MOTIONS FOR CLASS CERTIFICATION

While Defendants take no position at this time regarding the appropriateness of any particular proposed lead plaintiff to represent the class, they respectfully reserve all rights to oppose on all appropriate grounds any motion for the certification of any class that should be filed in this action. Such grounds potentially may include the fact that the claims of one or more of any proposed class representatives may not be typical of the claims of the putative class, or that one or more of the proposed class representatives would not fairly and adequately protect the interests of the putative class. See H.R. Conf. Rep. No. 104-369 at 34 (1995) reprinted in 1995 U.S.C.C.A.N. at 733 (lead plaintiff provision "not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Amended Motion to the extent that it seeks the appointment of an aggregation of unrelated investors as lead plaintiff, and for such other relief as the Court deems just and appropriate.

DATED:  March 22, 2004

**DEFENDANTS IBIS TECHNOLOGY CORP. AND MARTIN J. REID**

By their attorneys,

_____
Brian E. Pastuszenski (BBO #391030)
Christine S. Chung (BBO #631724)
Laura M. Stock (BBO #652276)
TESTA HURWITZ & THIBEAULT, LLP
125 High Street
Boston, MA 02110
(617) 248-7000

## CERTIFICATE OF SERVICE

      I hereby certify that I caused to be served upon counsel listed below, this 22nd day of March 2004, by first class mail, a true and correct copy of Defendants' Limited Opposition to Amended Motion of Martin Smolowitz and George Harrison for Consolidation, Appointment of Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel.

Thomas Shapiro, Esq.
Theodore M. Hess Mahan, Esq.
SHAPIRO, HABER AND URMY, LLP
75 State Street
Boston, Massachusetts 02109

Deborah R. Gross, Esq.
Robert Frutkin, Esq.
LAW OFFICE OF BERNARD M. GROSS
1515 Locust Street, 2nd Floor
Philadelphia, PA 19102

Gregory Mark Nespole, Esq.
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY 10016

LAW OFFICES OF BRUCE MURPHY
265 Lloyds Lane
Vero Beach, FL 32963

                                                                              _/s/ Laura M. Stock_
                                                                                Laura M. Stock

33041895